**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------X

KATHLEEN CURNS and LINDA ZUKAITIS,  :
                                           :

                   Plaintiffs,   :

                                           :

               v.   :   Civil Action No.

                                             :

WAL-MART STORES, INC.   :

                                           :

                   Defendant.   :

-------------------------------------------------------------X

## COMPLAINT AND DEMAND FOR JURY TRIAL

      Plaintiffs Kathleen Curns and Linda Zukaitis, by and through their undersigned counsel, as and for their Complaint in this action, hereby allege as follows:

### NATURE OF THE CLAIMS

      1.     This is an action for declaratory, injunctive and equitable relief, as well as monetary damages, to redress Defendant's unlawful employment practices and wrongful termination, including Defendant's unlawful discrimination against Plaintiffs on the basis of their age and/or gender and/or Ms. Curns' disability, and unlawful retaliation against Ms. Curns, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII"); the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq. ("ADEA"); the Americans With Disabilities Act, as amended, 42 U.S.C. §§ 12101 et seq. ("ADA"); and the New York State Human Rights Law, New York Executive Law §§ 290 et seq. ("NYSHRL").

      2.     Defendant's conduct was knowing, malicious, willful and wanton and/or showed a reckless disregard for Plaintiffs, which has caused and continues to cause Plaintiffs to suffer substantial economic and non-economic damages, permanent harm to

their professional and personal reputations, and severe mental anguish and emotional distress.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding the deprivation of Plaintiffs' rights under Title VII, the ADEA and the ADA.  The Court has supplemental jurisdiction over Plaintiffs' related claims arising under state law pursuant to 28 U.S.C. § 1367(a).

4.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendant resides in this district, as defined by 28 U.S.C. § 1391(c), and/or may be found in this district and 42 U.S.C. § 2000e-5 because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in New York.

## PARTIES

5.     Plaintiff Kathleen Curns ("Ms. Curns") is a female employee of Wal-Mart Stores, Inc., who resides in the State of New York, Schoharie County.  At all relevant times, she met the definition of an "employee" and a "qualified employee with a disability" under all applicable statutes.

6.     Ms. Curns is 62, and was born on February 25, 1944.

7.     Plaintiff Linda Zukaitis ("Ms. Zukaitis") is a female former employee of Wal-Mart Stores, Inc., who resides in the State of New York, Ontario County.  At all relevant times, she met the definition of an "employee" under all applicable statutes.

8.     Ms. Zukaitis is 53, and was born on April 23, 1953.

9.     Defendant Wal-Mart Stores, Inc. ("Wal-Mart") is a corporation with its headquarters located at 702 S.W. 8th Street, Bentonville, Arkansas 72716.  The self-

proclaimed "Nation's largest retailer," Wal-Mart operates stores located throughout the United States, including in New York. At all relevant times, Wal-Mart has met the definition of an "employer" under all applicable statutes.

## PROCEDURAL REQUIREMENTS

10.     Ms. Curns has complied with all statutory prerequisites to her Title VII claims, having filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about October 4, 2005, and having received notice of her right to sue from the EEOC on or about August 8, 2006. This action has been filed within 90 days of receipt of her EEOC right to sue letter.

11.     Ms. Zukaitis has complied with all statutory prerequisites to her Title VII claims, having filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about October 19, 2005, and having received notice of her right to sue from the EEOC on or about August 8, 2006. This action has been filed within 90 days of receipt of her EEOC right to sue letter.

12.     Any and all other prerequisites to the filing of this suit have been met.

## FACTUAL ALLEGATIONS

**Defendant's Discrimination Against Ms. Curns on the Basis of her Age, Gender and Disability**

13.     Ms. Curns is a qualified individual with a hearing disability which substantially limits one or more of her major life activities, including hearing and/or communicating.

14.     Due to this disability, Ms. Curns is forced to use hearing aids and otherwise requires accommodation. Notwithstanding her disability, Ms. Curns is fully qualified to work at Wal-Mart, with or without reasonable accommodation.

15.     Ms. Curns began working for Wal-Mart in or about July 1995, as a Shoe Department Manager.  Throughout the course of her employment, Ms. Curns compiled an exemplary performance record and was rewarded by Wal-Mart with numerous promotions and pay raises.

16.     For example, Ms. Curns was promoted to Assistant Manager in less than a year after she was hired.

17.     In 1997, Ms. Curns was promoted to the position of District Manager for Shoes and Jewelry for District 263.  Ms. Curns quickly developed a reputation as an outstanding District Manager, an achievement that is amply reflected in the uniformly positive employment evaluations that she consistently received as a District Manager.

18.     On May 12, 2005, Ms. Curns participated in a conference call with a member of Wal-Mart's Regional Management, Deborah Goldfarb.  During that conference call, Ms. Curns was stunned to learn that her position with the company had been eliminated.  At the age of 61, after over eight years of outstanding service as a District Manager, Ms. Curns was advised that she would have to apply for the newly created position of "Fashion Merchandiser" and compete for her job.

19.     Undaunted, Ms. Curns believed that her years of experience and her outstanding work performance evaluations made her one of the most qualified applicants for the new Fashion Merchandiser position.

20.     Approximately one week later, Stacy Wiggins, a District Manager, directed Ms. Curns to participate in a telephone interview as part of her application for a Fashion Merchandiser position.  Ms. Wiggins had long been aware that Ms. Curns suffers from a hearing problem that necessitates her use of hearing aids.  Although Ms. Wiggins

understood that a telephone interview placed Ms. Curns at a disadvantage because she could not hear as clearly as she would at an in-person interview, she declined to provide Ms. Curns with any accommodation for her disability during the interview process.  Ms. Curns specifically told Ms. Wiggins that she was having trouble hearing during the telephone interview, despite her hearing aids.

21.     Defendant discriminated against Ms. Curns by failing to initiate a discussion and/or engage in an interactive process concerning her need for an accommodation for her obvious and known disability.

22.     After this interview, Ms. Curns learned that a male applicant under the age of 40, John Morgans, had been given an advance copy of the interview questions to assist his interview for the same Fashion Merchandiser position.

23.     Ms. Wiggins subsequently informed Ms. Curns that her application had been rejected in favor of this applicant who had "interviewed better."  Ms. Wiggins also told Ms. Curns that Mr. Morgans "seemed more excited about the position," in an apparent reference to his age.

24.     Upon information and belief, Mr. Morgans had only worked for Wal-Mart for two years, and Ms. Curns had even trained him for his position.  She was clearly more qualified that he was for the Fashion Merchandiser position.

25.     In the course of speaking with other Wal-Mart employees about other possible and/or available positions within the company, Ms. Curns was devastated to hear repeated accounts of older female employees, like herself, who also were being excluded from appointment to the new Fashion Merchandiser positions in favor of younger employees and/or men.

26.    Wal-Mart's discriminatory decision to eliminate the position of District
Manager for Shoes and Jewelry resulted in female employees and/or employees over the
age of 40 being denied employment in the replacement position of Fashion Merchandiser.
Upon information and belief, male and/or younger employees were appointed to the
Fashion Merchandiser positions.

27.    This disparate distribution of these positions to male and/or younger
employees is the result of purposeful discrimination and of unlawful employment
practices that serve no reasonable business purpose, yet have a disproportionate adverse
impact on female and/or older employees.

28.    Ms. Curns therefore applied for several Store Manager, Fashion
Merchandiser and Co-Manager positions in different districts that would have been
comparable to her District Manager position, but was rejected from each and every
application.  Upon information and belief, like the Fashion Merchandiser positions,
several of these positions went to male employees and/or employees under the age of 40.

29.    The disparate distribution of these comparable positions to male and/or
younger employees is also the result of purposeful discrimination and of unlawful
employment practices that serve no reasonable business purpose, yet have a
disproportionate adverse impact on female and/or older employees.

30.    Ms. Curns soon began to suffer the physical effects of the stress of losing
her job and the discrimination she endured by Wal-Mart management.

31.    As a result, on June 28, 2005, Ms. Curns' doctor determined that she was
suffering from stress and depression, and ordered her to take a leave of absence from
work for medical treatment.

32.     On July 11, 2005, during the period of her medical leave, Ms. Curns received a letter from Wal-Mart, which informed her that her employment would be terminated if she did not accept an Assistant Manager position.  Ms. Curns was reluctant to accept an Assistant Manager position, which would not only require her to work longer hours on a more difficult schedule, but would also involve a pay cut of roughly $30,000 a year, as well as the loss of other benefits of employment.

33.     After Ms. Curns concluded that Wal-Mart was determined to prevent her from obtaining a comparable position, and instead favored younger and/or male employees, and despite more than eight years of exemplary service to Wal-Mart, Ms. Curns was forced to accept a demotion to the position of Assistant Manager in Wal-Mart store 2262 in Oneonta, NY.

34.     After she was forced to accept this demotion, three Co-Manager positions for which Ms. Curns was qualified were given to male employees and/or employees under the age of 40.  When she complained about this age- and gender-based discrimination to Micah Hawk, a Wal-Mart Human Resources representative for Region 17, he told her that she had to "fall to the bottom of the well a few times."  Ms. Curns responded that she was 61 years old and "had fallen a few times."

35.     As a result of Wal-Mart's discriminatory conduct, Ms. Curns has suffered monetary and/or economic damages, including but not limited to the loss of past and future income, compensation and other benefits.

36.     As a result of Wal-Mart's discriminatory conduct, Ms. Curns has suffered severe mental anguish and emotional distress, including but not limited to depression,

humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

37.     Wal-Mart's discriminatory actions were intentional, done with malice, and/or showed deliberate, willful, wanton and reckless indifference to Ms. Curns' civil rights.

38.     Ms. Curns complained about and/or otherwise opposed such discriminatory practices to Human Resources and Wal-Mart management.  In an act of retaliation because of such complaints and/or opposition, Ms. Curns was denied equal employment opportunities and/or demoted.

39.     As a result of the foregoing, Ms. Curns has suffered, and continues to suffer, economic loss, emotional distress, humiliation, and damage to her reputation and career.

**Ms. Zukaitis' Employment History with Wal-Mart**

40.     Ms. Zukaitis began working for Wal-Mart in 1991 as a Jewelry Department Manager.  Throughout her 14 years of employment, Ms. Zukaitis compiled an exceptional performance record and received several promotions.

41.     In 1994, Ms. Zukaitis was promoted to the position of District Manager for Shoes and Jewelry in District 187, Rochester NY, her most recent position prior to her constructive discharge from Wal-Mart.

42.     As a District Manager for Shoes and Jewelry, Ms. Zukaitis exercised supervisory responsibilities over two departments in each of nine Wal-Mart stores, and was responsible for overseeing approximately ninety Wal-Mart associates who reported to her.

43.     Ms. Zukaitis' dedication to her job is amply reflected in her written employment evaluations.  In the eyes of superiors and subordinates alike, she is a respected leader whose experience, work performance and dedicated teamwork are regarded as a model for all employees.

44.     In fact, Ms. Zukaitis received a series of awards in connection with her outstanding performance, including: "Team Player of the Year - Region 17" in 1998; "District Manager of the Quarter - Region 11," in the first and second quarters of 1999; "District Manager for First/Second Quarter - Entire Company" for the first and second quarters of 2000; and "District Manager of the Year - Region 11" in the year 1999-2000.

45.     Prior to May 2005, Ms. Zukaitis also received uniformly favorable performance evaluations in connection with her service as a District Manager for Shoes and Jewelry.

**Wal-Mart's Discrimination Against Ms. Zukaitis On The Basis Of Her Age And Gender**

46.     Ms. Zukaitis went on a Leave of Absence from Wal-Mart in connection with a medically necessary thyroid surgery that she underwent on May 3, 2005.  On May 12, 2005, while Ms. Zukaitis was still at home recovering from her operation, she received a call at 10:00am from her Regional Manager, Deborah Goldfarb, who requested that she participate in a conference call at 11:30am that day.  Ms. Goldfarb notified Ms. Zukaitis that she would then be required to lead a conference call at noon with 18 of her Department Managers.

47.     Over the course of the conference call, Ms. Zukaitis learned that Wal-Mart was implementing the "restructuring" plan, which would, like Ms. Curns, eliminate her position with the company.

48.    Ms. Zukaitis was advised that she would be eligible to apply for the newly created replacement position of "Fashion Merchandiser."  However, only 335 District Fashion Merchandiser positions were being created to replace the 385 District Managers for Shoes and Jewelry positions.  Moreover, Ms. Zukaitis was advised that she and the other 385 District Managers for Shoes and Jewelry, along with 38 other "Regional Managers" would be required to participate in a competitive application process to secure a new position once their current positions were "restructured" out of existence.

49.    During the first week of June 2005, Ms. Zukaitis applied for two of the new "Fashion Merchandiser" positions, one in the district in which she worked, and the second in an adjoining district.  However, after being interviewed, Ms. Zukaitis was informed that she had been rejected for both positions.  She later learned that both positions were given to younger male employees under the age of 40.

50.    Like with Ms. Curns, Wal-Mart's discriminatory decision to eliminate the position of District Manager for Shoes and Jewelry resulted in female employees and/or employees over the age of 40, such as Ms. Zukaitis, being denied employment in the replacement position of Fashion Merchandiser.

51.    This disparate distribution of these positions to male and/or younger employees is the result of purposeful discrimination and of unlawful employment practices that serve no reasonable business purpose, yet have a disproportionate adverse impact on female and/or older employees.

52.    Also during the first week of June 2005, Ms. Zukaitis applied for two different Co-Manager positions at Wal-Mart store 1966, in Geneseo New York which were comparable to her District Manager position.  Although Ms. Zukaitis was

exceedingly well qualified, she was advised that her applications for these positions had been rejected as well.  She later learned that both of these positions had also been given to younger men.

53.     After experiencing this litany of rejection in favor of younger, less qualified, male employees, Ms. Zukaitis began to fear that, despite her 14 years of experience with Wal-Mart, she was a target for discrimination on the basis of her age and gender.

54.     Again, Wal-Mart's disparate distribution of these comparable positions to male and/or younger employees is the result of purposeful discrimination and of unlawful employment practices that serve no reasonable business purpose, yet have a disproportionate adverse impact on female and/or older employees.

55.     On June 17, 2005, Ms. Zukaitis consulted with Micah Hawk, Regional Personnel Manager for Region 17, to obtain his advice in connection with her search for a new position with Wal-Mart.  Having only recently moved to the region, Mr. Hawk was not acquainted with Ms. Zukaitis, and had not had an opportunity to review her personnel file.  Nevertheless, he immediately suggested that she apply for an Assistant Manager position, which would entail a decrease in Ms. Zukaitis' pay and responsibilities.  This experience only confirmed Ms. Zukaitis' impression that, regardless of her qualifications, she was being systematically excluded from obtaining an equivalent position on account of her age and gender.  Mr. Hawk suggested that Ms. Zukaitis speak to Al Jenkins, a Division 1 District Manager, to inquire about other positions within Wal-Mart that might become available.

56.     Mr. Jenkins agreed to meet with Ms. Zukaitis on Monday, June 20, 2005, after canceling an earlier appointment.  At this meeting, Mr. Jenkins expressed uncertainty in response to Ms. Zukaitis' inquiries regarding the availability of comparable Wal-Mart positions.  Mr. Jenkins and Ms. Zukaitis arranged for a meeting on the following day with John Smith, the manager of Wal-Mart store 1966 in Geneseo, New York, and Brian Ratliff, the former Regional Manager who had been selected in lieu of Ms. Zukaitis to fill the new District Fashion Merchandiser position in her district.

57.     At the June 21, 2005 meeting, Ms. Zukaitis was offered an Assistant Manager position at store 1966, which would entail a substantial decrease in her pay and level of responsibility.  When Ms. Zukaitis stated that her experience and dedication qualified her for a more senior position that would roughly parallel the District Manager position that she had excelled at for over 11 years, she was advised that she could try to apply again for a Co-Manager position in six months.  Ms. Zukaitis requested some time to consider the offer of an Assistant Manager position, and Mr. Jenkins agreed.

58.     Ms. Zukaitis then applied for another Co-Manager position with Wal-Mart store 1830 in Auburn, NY.

59.     On June 27, 2005, Mr. Jenkins called Ms. Zukaitis on her cell phone to request her answer regarding his offer of an Assistant Manager position.  When Ms. Zukaitis indicated that she had yet to receive any response to her application for a Co-Manager position with Wal-Mart store 1830, Mr. Jenkins informed her that that position had been filled as well.  Upon information and belief, this position was filled by a male employee under the age of 40.  When Mr. Jenkins continued to press for a response to his offer, Ms. Zukaitis declined the Assistant Manager position because it was a demotion.

60.     The following day, on June 28, Micah Hawk called Ms. Zukaitis on her cell phone to inform her that he would not support her pursuit of a Co-Manager position because she lacked appropriate "Division 1" experience and told her, in substance, "This is Region 17 and you need to be an Assistant Manager first."

61.     Ms. Zukaitis then informed Mr. Hawk that she had declined Mr. Jenkins offer of an Assistant Manager position because it would entail a substantial decrease in her pay and conditions of employment.  In response, Mr. Hawk informed Ms. Zukaitis that she would now be required to work on "some type of project" at one store of her choosing until she obtained a permanent position.  Consistent with the competence and professionalism that have typified her career, Ms. Zukaitis chose store 1966, because it was undergoing a relocation and expansion, and Ms. Zukaitis believed that she could make a big contribution to that process.  Nevertheless, Mr. Hawk implied that Ms. Zukaitis had not been fulfilling her job obligations, and suggested that it would be easier to ensure that Ms. Zukaitis was performing appropriately if she were restricted to one store location.

62.     As a result of Mr. Hawk's baseless accusations, as well as Ms. Zukaitis' general sense that she had been "given the run around" by management officials who were determined to reward her years of dedication and experience with a demotion, Ms. Zukaitis began to suffer from high blood pressure, stomach pains and depression.

63.     On July 1, 2005, Ms. Zukaitis was on a 30-day leave of absence for "Acute Depression" by her doctor, who suggested that she seek counseling.  The doctor also informed Ms. Zukaitis that she would be required to return for a follow-up visit before being authorized to return to work.

64.     On July 5, 2005, Ms. Zukaitis was contacted by a co-worker and friend who worked at Wal-Mart's Home Office.  Ms. Zukaitis' friend advised her that employees at Wal-Mart's home office had been spreading rumors that Ms. Zukaitis was "milking the system" by using medical claims as a pretext for not reporting to work.

65.     On July 6, 2005, Ms. Zukaitis received a call from Tiffany Meigs at the Wal-Mart Home Office.  Ms. Meigs demanded that Ms. Zukaitis return her company car that same day.  When Ms. Zukaitis indicated that her medical condition might prevent her from returning the car until later that evening, Ms. Meigs transferred the call to Michelle Gunther, another home office employee.  Ms. Gunther informed Ms. Zukaitis that she was required to return her vehicle to a local Wal-Mart "ASAP."  Ms. Zukaitis, accompanied by her husband, returned the car later that night.

66.     On July 11, 2005, while Ms. Zukaitis was still on a leave of absence in connection with her depression, she received a letter from Micah Hawk informing her of Wal-Mart's employee severance policies.  Ms. Zukaitis then contacted Michelle Gunther for further information.  Ms. Gunther indicated that Mr. Hawk should not have sent such a hostile, harassing letter to Ms. Zukaitis while she was on a medically-impelled leave of absence.  Ms. Gunther advised Ms. Zukaitis to send a letter to Mr. Hawk confirming her intention to return to work as soon as she obtained her doctor's authorization to do so.

67.     However, on July 14, 2005, Ms. Zukaitis received a second, identical letter from Mr. Hawk.

68.     During the week of July 20, 2005, Ms. Zukaitis received two additional letters marked "Second Notice" from Mr. Hawk.  These letters indicated that if Ms.

Zukaitis did not accept the demotion to an Assistant Manager position by July 31, 2005, her employment with Wal-Mart would be terminated.

69.     On July 27, 2005, Ms. Zukaitis returned for a follow-up appointment with her doctor.  After determining that Ms. Zukaitis was continuing to suffer from acute depression, her doctor extended her leave of absence until August 15, 2005.  Ms. Zukaitis promptly faxed a copy of the relevant paperwork to Mr. Hawk at the Wal-Mart Home Office.

70.     However, on August 15, 2005, Ms. Zukaitis determined that Wal-Mart's unyielding refusal to offer her a position commensurate with her years of experience and dedication to the Company, coupled with its persistent course of harassment and intimidation during the period of her medical leave, made it impossible for her to return to work at Wal-Mart.  Ms. Zukaitis was therefore forced to resign her position with Wal-Mart on or around August 15, 2005.

71.     As a result of Wal-Mart's discriminatory conduct, Ms. Zukaitis has suffered monetary and/or economic damages, including but not limited to the loss of past and future income, compensation and other benefits.

72.     As a result of Wal-Mart's discriminatory conduct, Ms. Zukaitis has suffered severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

73.     Wal-Mart's discriminatory actions were intentional, done with malice, and/or showed deliberate, willful, wanton and reckless indifference to Ms. Zukaitis' civil rights.

74.     As a result of the foregoing, Ms. Zukaitis has suffered, and continues to suffer, economic loss, emotional distress, humiliation, and damage to her reputation and career.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Discrimination in Violation of Title VII)

75.     Plaintiffs hereby repeat and reallege each and every allegation set forth in paragraphs 1 through 74, inclusive, as if fully set forth herein.

76.     Defendant Wal-Mart has discriminated against Plaintiffs on the basis of their gender in Violation of Title VII by denying to them equal terms and conditions of employment, including but not limited to, demoting and/or constructively discharging Plaintiffs, denying them the opportunity to work in an employment setting free of unlawful discrimination, and denying them compensation, job titles and benefits equal to that of male employees.  In addition, Defendant Wal-Mart has implemented and maintains policies and practices that have a disparate discriminatory impact on female employees.

77.     As a direct and proximate result of Defendant Wal-Mart's unlawful discriminatory conduct in violation of Title VII, Plaintiffs have suffered and continue to suffer monetary and/or economic harm, including but not limited to, loss of past and future income, compensation and benefits for which they are entitled to an award of damages.

78.     As a direct and proximate result of Defendant Wal-Mart's unlawful discriminatory conduct in violation of Title VII, Plaintiffs have suffered and continue to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-

confidence, and emotional pain and suffering for which they are entitled to an award of damages.

79.     Defendant Wal-Mart's unlawful discriminatory actions constitute malicious, willful and wanton violations of Title VII for which Plaintiffs are entitled to an award of punitive damages.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Retaliation in Violation of Title VII)

80.     Plaintiff Curns hereby repeats and realleges each and every allegation in paragraphs 1 through 79, inclusive, as if fully set forth herein.

81.     Defendant Wal-Mart has retaliated against Plaintiff Curns in violation of Title VII for her opposition to Defendant's discriminatory practices toward herself and other female employees and/or her participation in lodging complaints about Defendant's discriminatory practices toward herself and other female employees.

82.     As a direct and proximate result of Defendant Wal-Mart's unlawful retaliatory conduct in violation of Title VII, Plaintiff Curns has suffered and continues to suffer monetary and/or economic harm, including but not limited to, loss of past and future income, compensation and benefits for which she is entitled to an award of damages.

83.     As a direct and proximate result of Defendant Wal-Mart's unlawful retaliatory conduct in violation of Title VII, Plaintiff Curns has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of damages.

84.     Defendant Wal-Mart's unlawful retaliatory actions constitute malicious, willful and wanton violations of Title VII for which Plaintiff Curns is entitled to an award of punitive damages.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Discrimination in Violation of ADEA)

85.     Plaintiffs hereby repeat and reallege each and every allegation in paragraphs 1 through 84, inclusive, as if fully set forth herein.

86.     Defendant Wal-Mart has discriminated against Plaintiffs on the basis of age in violation of ADEA by denying to them the same terms and conditions of employment available to younger employees, including but not limited to, demoting and/or constructively discharging Plaintiffs, denying them the opportunity to work in an employment setting free of unlawful discrimination, and denying them compensation, job titles and benefits equal to that of employees under the age of 40.  In addition, Defendant Wal-Mart has implemented and maintains policies and practices that have a disparate discriminatory impact on employees older than 40 years of age.

87.     As a direct and proximate result of Defendant Wal-Mart's unlawful discriminatory conduct in violation of ADEA, Plaintiffs have suffered and continue to suffer harm for which they are entitled to an award of monetary damages and other relief.

88.     Defendant Wal-Mart's unlawful discriminatory actions constitute willful violations of ADEA for which Plaintiffs are entitled to an award of liquidated damages.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Retaliation in Violation of ADEA)

89.     Plaintiff Curns hereby repeat and reallege each and every allegation in paragraphs 1 through 88, inclusive, as if fully set forth herein.

90.     Defendant Wal-Mart has retaliated against Plaintiff Curns in violation of ADEA for her opposition to Defendant's discriminatory practices toward herself and other employees on the basis of age and/or her participation in lodging complaints about Defendant's discriminatory practices toward herself and other older employees.  As a direct and proximate result of Defendant Wal-Mart's unlawful and retaliatory conduct in violation of ADEA, Plaintiff Curns has suffered, and continues to suffer, harm for which she is entitled to an award of monetary damages and other relief.

91.     Defendant Wal-Mart's unlawful and discriminatory actions constitute willful violations of ADEA for which Plaintiff Curns is entitled to an award of liquidated damages.

### AS AND FOR A FIFTH CAUSE OF ACTION
#### (Discrimination in Violation of ADA)

92.     Plaintiff Curns hereby repeats and realleges each and every allegation in paragraphs 1 through 91, inclusive, as if fully set forth herein.

93.     Defendant Wal-Mart has discriminated against Plaintiff Curns in violation of the ADA by denying her equal terms and conditions of employment, including but not limited to, denying her the opportunity to work in the Fashion Manager position, for which she was fully qualified, because of her disability, because of Plaintiff's disability and/or because of Plaintiff's record of disability.

94.     As a direct and proximate result of Defendant Wal-Mart's unlawful and discriminatory conduct in violation of the ADA, Plaintiff Curns has suffered and continues to suffer monetary and/or economic damages, including but not limited to, loss of past and future income, compensation and benefits.

95.      As a direct and proximate result of Defendant Wal-Mart's unlawful and discriminatory conduct in violation of the ADA, Plaintiff Curns has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

96.      Defendant Wal-Mart's unlawful and discriminatory actions constitute willful violations of the ADA for which Plaintiff Curns is entitled to an award of punitive damages.

## AS AND FOR A SIXTH CAUSE OF ACTION
### (Violation of the Duty of Reasonable Accommodation)

97.      Plaintiffs hereby repeat and reallege each and every allegation in paragraphs 1 through 96, inclusive, as if fully set forth herein.

98.      Defendant Wal-Mart violated its duty under the ADA to provide Plaintiff Curns with a reasonable accommodation when it failed to accommodate Plaintiff regarding her need for an accommodation based on her obvious and known disability.

99.      As a direct and proximate result of Defendant Wal-Mart's violation of the duty of reasonable accommodation under the ADA, Plaintiff Curns has suffered and continues to suffer harm for which she is entitled to an award of damages.

100.      Defendant Wal-Mart's unlawful conduct constitutes a knowing, malicious, willful and wanton violation of the ADA for which Plaintiff Curns is entitled to an award of punitive damages.

## AS AND FOR A SEVENTH CAUSE OF ACTION
### (Discrimination in Violation of New York State Human Rights Law)

101.      Plaintiffs hereby repeat and reallege each and every allegation in paragraphs 1 through 100, inclusive, as if fully set forth herein.

20

102.    Defendant Wal-Mart has discriminated against Plaintiffs on the basis of their gender, age and/or documented medical disability in violation of the New York State Human Rights Law by denying them equal terms and conditions of employment, including but not limited to, demoting and/or constructively discharging Plaintiffs, denying them the opportunity to work in a setting free of unlawful discrimination, and denying them compensation, job titles and benefits equal to that of male, younger and/or non-disabled employees.  In addition, Defendant Wal-Mart has implemented and maintains policies and practices that have a disparate discriminatory impact on female employees and/or employees older than 40 years of age.

103.    As a direct and proximate result of Defendant Wal-Mart's unlawful discriminatory conduct in violation of the New York State Human Rights Law, Plaintiffs have suffered and continue to suffer monetary and/or economic harm, including but not limited to, loss of past and future income, compensation and benefits for which they are entitled to an award of damages.

104.    As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the New York State Human Rights Law, Plaintiffs have suffered and continue to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which they are entitled to an award of damages.

## AS AND FOR AN EIGHTH CAUSE OF ACTION

### (Retaliation in Violation of New York State Human Rights Law)

105.    Plaintiff Curns hereby repeats and realleges each and every allegation in paragraphs 1 through 104, inclusive, as if fully set forth herein.

21

106.    Defendant Wal-Mart has retaliated against Plaintiff Curns in violation of the New York State Human Rights Law for her opposition to Defendant's discriminatory practices toward herself and other female and/or older employees and/or her request for reasonable accommodations in connection with her documented medical disabilities.

107.    As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of the New York State Human Rights Law, Plaintiff Curns has suffered and continues to suffer monetary and/or economic harm, including but not limited to loss of past and future income, compensation and benefits for which she is entitled to an award of damages.

108.    As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of the New York State Human Rights Law, Plaintiff Curns has suffered and continue to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that the Court enter judgment in their favor and against Defendant, containing the following relief:

A.      A declaratory judgment that the actions, conduct and practices of Defendant complained of herein violate the laws of the United States and the State of New York;

B.      An injunction and order permanently restraining Defendant from engaging in such unlawful conduct;

C.      An order directing Defendant to place Plaintiffs in the position they would

have occupied but for Defendant's discriminatory and/or retaliatory treatment and otherwise unlawful and/or tortious conduct, as well as to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect their employment and personal lives;

D.  An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiffs for all monetary and/or economic damages, including but not limited to, the loss of past and future income, wages, compensation, seniority and other benefits of employment;

E.  An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiffs for all non-monetary and/or compensatory damages, including but not limited to, compensation for their mental anguish, humiliation, embarrassment, stress and anxiety, emotional pain and suffering, emotional distress and physical injuries;

F.  An award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiffs in an amount to be determined at trial, plus prejudgment interest;

G.  An award of punitive damages;

H.  An award of liquidated damages;

I.  An award of costs that Plaintiffs have incurred in this action, as well as Plaintiffs' reasonable attorneys' fees to the fullest extent permitted by law; and

J.  Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues of fact and damages stated herein.

Dated: New York, New York
       November 1, 2006

Respectfully submitted,

THOMPSON WIGDOR & GILLY LLP

By: _____
       Douglas H. Wigdor (DW-9737)

350 Fifth Avenue, Suite 5720
New York, NY 10118
Telephone: (212) 239-9292
Facsimile: (212) 239-9001

COUNSEL FOR PLAINTIFFS