**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
KATHLEEN CURNS and LINDA ZUKAITIS,    :

                                    :      No. 06-CV-1336 (GLS/DLH)

                  Plaintiffs,    :

                                      :

         v.                      :

                                      :

WAL-MART STORES, INC.             :

                                      :

                  Defendant.    :

                                      :
-------------------------------------------------------------X

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION IN LIMINE

Douglas H. Wigdor
Andrew S. Goodstadt
Ariel Y. Graff

THOMPSON WIGDOR & GILLY LLP
85 Fifth Avenue
New York, New York 10003
Tel. (212) 257-6800
Fax. (212) 257-6845

COUNSEL FOR PLAINTIFFS

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................... iii

PRELIMINARY STATEMENT .........................................................................1

ARGUMENT .....................................................................................................1

   I.  WAL-MART'S MOTION TO PRECLUDE ITS EEOC POSITION
     STATEMENTS SHOULD BE DENIED ............................................1

      A.  Wal-Mart's Position Statements Are Party Admissions ...........................1

      B.  Wal-Mart's Position Statements Are Admissible to Prove Pretext ........................3

      C.  Nothing in Wal-Mart's Position Statement Relates to Settlement
        Negotiations ...........................................................................6

  II.  WAL-MART'S "BENEFITS STRATEGY MEMORANDUM" SHOULD BE
     ADMITTED AS CIRCUMSTANTIAL EVIDENCE OF A CULTURE OF
     DISCRIMINATION ON THE BASIS OF AGE AND DISABILITY ...............................7

 III.  WAL-MART'S MOTION TO PRECLUDE "CAUSATION TESTIMONY
     REGARDING PLAINTIFFS' CLAIMS FOR EMOTIONAL DISTRESS"
     SHOULD BE DENIED ...................................................................13

 IV.  WAL-MART'S MOTION TO PRECLUDE "TESTIMONY FROM OTHER
     INDIVIDUALS REGARDING ALLEGED AGE OR SEX
     DISCRIMINATION AT WAL-MART" SHOULD BE DENIED ...................................15

  V.  WAL-MART'S MOTION TO PRECLUDE EVIDENCE OF WIGGINS'
     DISHONORABLE DISCHARGE FOR WRITING "BAD CHECKS"
     SHOULD BE DENIED ...................................................................19

 VI.  WAL-MART'S MOTION TO PRECLUDE EVIDENCE OF
     DECISIONMAKER RANDY SIMS' "DISCIPLINARY COACHING"
     SHOULD BE DENIED ...................................................................20

VII.  WAL-MART'S MOTION TO PRECLUDE TESTIMONY REGARDING
     ADVANCE PROVISION OF INTERVIEW SCRIPT TO A
     SUBSTANTIALLY YOUNGER MALE APPLICANT SELECTED AS
     FASHION MERCHANDISER IN FAVOR OF MS. CURNS SHOULD BE
     DENIED .....................................................................................21

VIII.   WAL-MART'S MOTION TO PRECLUDE "EVIDENCE RELATING TO
        DAMAGES THAT HAS NOT BEEN PRODUCED TO WAL-MART" IS
        BASELESS AND SHOULD BE DENIED ........................................................................23

CONCLUSION.............................................................................................................................25

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Aka v. Washington Hospital Center*,
   156 F.3d 1284 (D.C. Cir. 1998) .........................................................................10

*America Center for International Labor Solidarity v. Federal Insurance Co.*,
   518 F. Supp. 2d 163 (D.D.C. 2007) .....................................................................2

*Azar v. TGI Friday's, Incorporated*,
   945 F. Supp. 485 (E.D.N.Y. 1996) .....................................................................21

*Binder v. Long Island Lighting Corporation*,
   933 F.2d 187 (2d Cir. 1991)...................................................................................7

*Branch v. Phillips Petroleum Corporation*,
   638 F.2d 873 (5th Cir. 1981) .................................................................................6

*Brewer v. Quaker State Oil Refining Corporation*,
   72 F.3d 326 (3d Cir. 1995)...................................................................................11

*Brooks v. Grandma's House Day Care Centers, Incorporated*,
   227 F. Supp. 2d 1041 (E.D. Wis. 2002)................................................................7

*Buscemi v. Pepsico, Incorporated*,
   736 F. Supp. 1267 (S.D.N.Y. 1990)....................................................................11

*Byrne v. Gracious Living Industries*,
   No. 01-CV-10153, 2003 U.S. Dist. LEXIS 2552 (S.D.N.Y. Feb. 25, 2003)....................13

*Carlton v. Mystic Transportation, Incorporated*,
   202 F.3d 129 (2d Cir. 2000).................................................................................5

*Catalano v. Lynbrook Glass & Architectural Metals Corporation*,
   No. 06-CV-2907 (JFB)(AKT), 2008 U.S. Dist. LEXIS 589
   (E.D.N.Y. Jan. 4, 2008) .......................................................................................20

*Chertkova v. Connecticut General Life Insurance Corporation*,
   92 F.3d 81 (2d Cir. 1996) .....................................................................................20

*Chiquita International v. M/V Bolero Reefer*,
   93-CV-167, 1994 U.S. Dist. LEXIS 5820 (S.D.N.Y. May 6, 1994) .................................14

iii

*Cline v. Roadway Express, Incorporated,*
  689 F.2d 481 (4th Cir. 1982) ...................................................................12

*Danzer v. Norden System, Incorporated,*
  151 F.3d 50 (2d Cir. 1998)......................................................................11

*Dauer v. Verizon Communication Incorporated,*
  No. 03-CV-5047(PGG), 2009 U.S. Dist. LEXIS 5182
  (S.D.N.Y. Jan. 26, 2009)........................................................................18

*DeRienzo v. Metro. Transit Auth.,*
  No. 01-CV-8138 (CBM), 2004 U.S. Dist. LEXIS 439
  (S.D.N.Y. Jan 15, 2004)..........................................................................14

*EEOC v. Concrete Applied Construction Technologies Corporation,*
  No. 03-CV-670A(F), 2007 U.S. Dist. LEXIS 67823
  (W.D.N.Y. June 28, 2007) .......................................................................5

*EEOC v. Town of Huntington,*
  No. 05-CV-4559, 2008 U.S. Dist. LEXIS 9602 (E.D.N.Y. Feb. 8, 2008)..........................2

*EEOC v. Ethan Allen, Incorporated,*
  44 F.3d 116 (2d Cir. 1994).....................................................................4, 5

*Farber v. Arrow Corporation,*
  No. 82-CV-7563, 1986 U.S. Dist. LEXIS 19977
  (S.D.N.Y. Sept. 24, 1986) .......................................................................6

*Farrell v. Wal-Mart Stores, Incorporated,*
  No. 05-2168 (TMG), 2007 U.S. Dist. LEXIS 25246
  (E.D. Pa. Mar. 19, 2007)........................................................................11

*Frazier v. Indiana Department of Labor,*
  *Number IP 01-198-C-T/K,* 2003 U.S. Dist. LEXIS 9073
  (S.D. Ind. Mar. 17, 2003)......................................................................6, 7

*Haskell v. Kaman Corporation,*
  743 F.2d 113 (2d Cir. 1984)....................................................................19

*Hollander v. America Cyanmid Corporation,*
  895 F.2d 80 (2d Cir. 1990)......................................................................17

*Hunt v. Tektronix, Incorporated,*
  952 F. Supp. 988 (W.D.N.Y. 1997) ...............................................................11

*Jones v. WMATA*,
  946 F. Supp. 1011 (D.D.C. 1996) ...................................................................17

*Josey v. John R. Hollingsworth Corporation*,
  996 F.2d 632 (3d Cir. 1993)...........................................................................11

*Khan v. Sanofi-Synthelabo, Incorporated*,
  No. 01-CV-11423 (JS)(DF), 2002 U.S. Dist. LEXIS 23161
  (S.D.N.Y. Dec. 3, 2002)....................................................................................2

*Kunglig Jarnvagsstyrelsen v. Dexter & Carpenter, Incorporated*,
  32 F.2d 195 (2d Cir. 1929).................................................................................3

*Lockhart v. Westinghouse Credit Corporation*,
  879 F.2d 43 (3d Cir. 1989)...............................................................................12

*Martin v. Reno*,
  No. 96-CV-7646, 2000 U.S. Dist. LEXIS 18278 (S.D.N.Y. Dec. 18, 2000) ...................18

*Maschka v. Genuine Parts Corporation*,
  122 F.3d 566 (8th Cir. 1997) ........................................................................3, 5

*Masters v. F.W. Webb Corporation*,
  No. 03-CV-6280L, 2006 U.S. Dist. LEXIS 64645 (W.D.N.Y. Sept. 11,
  2006) ...............................................................................................................16

*Mugavero v. Arms Acres, Incorporated*,
  No. 03-CV-5724 (PGG), 2009 U.S. Dist. LEXIS 56214
  (S.D.N.Y. July 1, 2009) ...............................................................................2, 18

*Obiajulu v. City of Rochester Department of Law*,
  166 F.R.D. 293 (W.D.N.Y. 1996)...................................................................17

*Olitsky v. Spencer Gifts, Incorporated*,
  964 F.2d 1471 (5th Cir. 1992) ......................................................................5, 6

*Phillip v. ANR Freight System, Incorporated*,
  945 F.2d 1054 (8th Cir. 1991) .........................................................................16

*Purgess v. Sharrock*,
  33 F.3d 134 (2d Cir. 1994)................................................................................2

*Rea v. Martin Marietta Corporation*,
  29 F.3d 1450 (10th Cir. 1994) .........................................................................12

*Reeves v. Sanderson Plumbing Products, Incorporated*,

530 U.S. 133 (2000).............................................................................................4

*Russell v. McKinney Hospital Venture,*
235 F.3d 219 (5th Cir. 2000) .......................................................................12

*Salas v. United States,*
165 F.R.D. 31 (W.D.N.Y. 1995)...................................................................14

*Schelero v. Avis Rent a Car Systems,*
No. 99-CV-2003, 2001 U.S. Dist. LEXIS 24680
(E.D.N.Y. Nov. 20, 2001)...........................................................15, 21, 22, 24

*Schmitz v. St. Regis Paper Corporation,*
811 F.2d 131 (2d Cir. 1987)...........................................................................4

*Sperling v. Hoffmann-La Roche, Incorporated,*
924 F. Supp. 1396 (D.N.J. 1996) ..................................................................10

*Spulak v. K Mart Corporation,*
894 F.2d 1150 (10th Cir. 1990) ....................................................................17

*St. Mary's Honor Center v. Hicks,*
509 U.S. 502 (1993)........................................................................................4

*United States v. Kane,*
944 F.2d 1406 (7th Cir. 1991) ......................................................................20

*United States v. Lawton,*
366 F.3d 550 (7th Cir. 2004) ........................................................................20

*United States v. Lewis,*
No. 07-CV-258 (NBF), 2009 U.S. Dist. LEXIS 39280
(W.D. Pa. May 8, 2009).................................................................................20

*United States  v. McKeon,*
738 F.2d 26 (2d Cir. 1984).............................................................................3

*United States v. Miller,*
No. CR 09-4014 (MWB), 2009 U.S. Dist. LEXIS 102035
(N.D. Iowa Oct. 30, 2009) ............................................................................20

*Washington v. Garrett,*
10 F.3d 1421 (9th Cir. 1993) ..........................................................................4

*Willis v. Onondaga County,*
No. 04-CV-0828, 2010 U.S. Dist. LEXIS 13832 (N.D.N.Y Feb. 17, 2010) ....................13

*Zahorick v. Cornell University*,
   98 F.R.D. 27 (N.D.N.Y. 1983)..............................................................................17

*Zanowic v. Ashcroft*,
   No. 97-CV-5292 (JGK)(HBP), 2002 U.S. Dist. LEXIS 3857
   (S.D.N.Y. Mar. 8, 2002) ........................................................................................14

## FEDERAL STATUTES

Fed. R. Civ. P. 26.....................................................................................................13, 15

Fed. R. Evid. 608............................................................................................................20

Fed. R. Evid. 609............................................................................................................19

Fed. R. Evid. 801..............................................................................................................1

## PRELIMINARY STATEMENT

Plaintiffs Kathleen Curns ("Ms. Curns") and Linda Zukaitis ("Ms. Zukaitis") (together, "Plaintiffs") respectfully submit this memorandum of law in opposition to Defendant Wal-Mart Stores, Inc.'s ("Defendant" or "Wal-Mart") omnibus motion *in limine* to preclude them from introducing pertinent evidence at the trial in this matter.  In seeking to preclude Plaintiffs from introducing unquestionably relevant evidence at trial, Wal-Mart makes numerous desperate and unavailing arguments in a misguided attempt to distract the Court from the obvious relevance and admissibility of Plaintiffs' proposed exhibits and testimony.

## ARGUMENT

**I.     WAL-MART'S MOTION TO PRECLUDE ITS EEOC POSITION STATEMENTS SHOULD BE DENIED**

### A.     Wal-Mart's Position Statements Are Party Admissions

Contrary to Wal-Mart's mischaracterization of the Position Statements that it submitted to the EEOC in response to Plaintiffs' discrimination charges as "second-hand unsworn hearsay statements by an attorney" (Def.'s Mem. at 14), the Position Statements constitute party admissions and are admissible against Wal-Mart under Fed. R. Evid. 801.[1] Rule 801(d)(2) provides, in relevant part, that a statement is not hearsay if:

> the statement is offered against a party and is (A) the party's own statement, in either an individual or representative capacity or (B) a statement of which the party has manifested an adoption or belief in its truth, or (C) a statement by a person authorized by the party to make a statement concerning the subject, or (D) a statement by the party's agent or servant concerning a matter within the scope of the

---

[1]     Copies of Defendant's EEOC Position Statements are attached to the Declaration of Douglas H. Wigdor in Opposition to Wal-Mart's Motion *In* Limine (hereinafter, "Wigdor Decl.") as <u>Ex. 1</u>.

agency or employment, made during the existence of the
relationship.

Statements made by a party's attorney during litigation of a case are admissible against the

party under Rule 801. *See Purgess v. Sharrock*, 33 F.3d 134, 144 (2d Cir. 1994) ("A court

can appropriately treat statements in briefs as binding judicial admissions of fact.").

Moreover, this principle is equally applicable when the statements are made during the

administrative investigation of a claim of employment discrimination. *See*, *e.g.*, *Mugavero v.*

*Arms Acres, Inc.*, No. 03-CV-5724 (PGG), 2009 U.S. Dist. LEXIS 56214, at *11-12 (S.D.N.Y. July

1, 2009) ("Defendants' [EEOC] position statements — if offered by Plaintiff — are not

hearsay because they are admissions.") (citing FRE 801(d)(2)(D)); *EEOC v. Town of*

*Huntington*, No. 05 CV 4559 (DRH), 2008 U.S. Dist. LEXIS 9602, at *21 (E.D.N.Y. Feb. 8,

2008) (holding that defendant's attorney's statement made to EEOC during investigation

constitutes party admission); *Am. Ctr. for Int'l Labor Solidarity v. Fed. Ins. Co.*, 518 F. Supp.

2d 163, 168-69 (D.D.C. 2007) ("Position Statements may be admissible as evidence of party

admissions or for purposes of witness impeachment."); *Khan v. Sanofi-Synthelabo, Inc.*, No.

01-CV-11423 (JS)(DF), 2002 U.S. Dist. LEXIS 23161, at *9 (S.D.N.Y. Dec. 3, 2002) (position

statement contradicting affidavits on how an employment decision was made "may stand

as a party admission").

Although Wal-Mart also claims that the Position Statements were submitted "at the

earliest stages of the dispute before any discovery was conducted" (Def.'s Mem. at 5), and

that the purported justifications for the challenged employment actions that Wal-Mart

initially proffered to the EEOC have shifted to conform to the evidence obtained through

discovery, the fact that Wal-Mart has now abandoned certain of the claims set forth in the

Position Statements does not render the statements inadmissible.   As the Second Circuit

has stated:

> When a pleading is amended or withdrawn, the superseded
> portion ceases to be a conclusive judicial admission; but it
> still remains as a statement once seriously made by an
> authorized agent, and as such it is competent evidence of the
> facts stated, though controvertible, like any other extra-
> judicial admission made by a party or his agent. . . . If the
> agent made the admission without adequate information,
> that goes to its weight, not to its admissibility.

*U.S. v. McKeon*, 738 F.2d 26 at 31 (2d Cir. 1984) (quoting *Kunglig Jarnvagsstyrelsen v. Dexter*

*& Carpenter, Inc.*, 32 F.2d 195, 198 (2d Cir. 1929)) (omission in original); *see also Maschka*

*v. Genuine Parts Co.*, 122 F.3d 566, 570-571 (8th Cir. 1997) (defendant's EEOC position

statement properly admitted as proof of pretext; fact that letter was not authored by

decisionmaker would, at most, affect weight of evidence, which is a determination for the

trier of fact, not the court).   Thus, any assertion that Defendant's proffered reasons have

changed due to its subsequent investigation of the facts does not affect the admissibility of

Defendant's Statements.   There can be no dispute that counsel was acting in an authorized

capacity for Defendant when it made the statements at issue.   Defendant's Position

Statements submitted to the EEOC regarding the merits of Plaintiffs' claims in this case are

therefore admissible evidence as to the facts stated.

### B.    Wal-Mart's Position Statements Are Admissible to Prove Pretext

Ms. Curns and Ms. Zukaitis seek to introduce Wal-Mart's Position Statements

regarding its asserted reasons for the actions challenged in this case as evidence that those

reasons have shifted over time and are therefore pretextual.   It is well established that

where an employer's justifications for its actions change over the course of an investigation

and subsequent litigation, the jury may infer that the employer's reasons are false and a

pretext for discrimination.  In *EEOC v. Ethan Allen, Inc.*, 44 F.3d 116, 120 (2d Cir. 1994),
plaintiff introduced evidence at trial that the employer had provided inconsistent
explanations for its actions.  Despite this evidence, the district court granted judgment as a
matter of law for defendant at the close of trial.  In vacating the district court's judgment
and remanding for a new trial, the Second Circuit held that the evidence plaintiff offered
was sufficient for the case to be sent to the jury, since "[f]rom such discrepancies a
reasonable juror could infer that the explanations . . . were pretextual, developed over time
to counter the evidence suggesting age discrimination."  44 F.3d at 120 (citing, *inter alia*,
*Schmitz v. St. Regis Paper Co.*, 811 F.2d 131, 132 (2d Cir. 1987) (*per curiam*) (holding that
shift in justifications could be sufficient to prove pretext); *Washington v. Garrett*, 10 F.3d
1421, 1434 (9th Cir. 1993) ("[I]n the ordinary case, such fundamentally different
justifications for an employer's action . . . give rise to a genuine issue of fact with respect to
pretext since they suggest the possibility that . . . the official reasons [were not] the true
reasons.")).

   From evidence that an employer's asserted justifications are pretextual, a jury may
make "the ultimate inference of discrimination."  *Ethan Allen*, 44 F.3d at 120.  "Proof that
the defendant's explanation is unworthy of credence is simply one form of circumstantial
evidence that is probative of intentional discrimination, and it may be quite persuasive."
*Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 147 (2000) (citing and quoting *St.
Mary's Honor Center v. Hicks*, 509 U.S. 502, 517 (1993) ("[P]roving the employer's reason
false becomes part of (and often considerably assists) the greater enterprise of proving that
the real reason was intentional discrimination")).

Given this common method of proving pretext, courts routinely admit evidence of employer statements made during administrative investigations.  In *Ethan Allen*, for example, the evidence cited by the Second Circuit as supporting plaintiff's claim of pretext included the employer's written initial response to the state's civil rights investigation in which the employer stated that the sole reason for the employee's discharge was a decrease in the duties of his position.  44 F.3d at 120.  The employer later abandoned this position when it became clear that it was false, and then asserted it fired the employee because of performance problems.  *Id.*

Similarly, in *Carlton v. Mystic Transportation, Inc.*, 202 F.3d 129, 137 (2d Cir. 2000), the Second Circuit reversed the district court's grant of summary judgment based on the defendant's representations during the EEOC investigation.  Contrasting the employer's justification for dismissing the plaintiff proffered during the EEOC investigation with the justification put forth during the litigation, the court held that "[t]he inconsistency between the justifications offered for [plaintiff's] dismissal in the two proceedings raises a genuine issue of material fact with regard to the veracity of [the] non-discriminatory reason."  *Id.*; *see also Maschka v. Genuine Parts Co.*, 122 F.3d 566, 570-71 (8th Cir. 1997) (letter sent by defense counsel in response to charge of discrimination was properly admitted to demonstrate that defendant's asserted reasons for employee's discharge were inconsistent); *Olitsky v. Spencer Gifts, Inc.*, 964 F.2d 1471, 1476-77 (5th Cir. 1992) (response to charge setting forth factual information related to merits of charge was properly admitted); *EEOC v. Concrete Applied Constr. Techs. Corp.*, No. 03-CV-670A(F), 2007 U.S. Dist. LEXIS 67823, at *49 (W.D.N.Y. June 28, 2007) (discrepancies between defendant's initial response to EEOC charge and subsequent statements created issue of material fact

for trial), *adopted, summary judgment denied*, 511 F. Supp. 2d 334 (2007); *Farber v. Arrow Co.*, No. 82-CV-7563, 1986 U.S. Dist. LEXIS 19977 (S.D.N.Y. Sept. 24, 1986) (holding that because "omission in [defendant's] letter to the EEOC reasonably could affect the jury's assessment of whether the defendant attempted to conceal a discriminatory motive from the EEOC [defendant's letter] was properly admitted as part of plaintiff's proof of pretext"); *Frazier v. Ind. Dep't of Labor*, No. IP 01-198-C-T/K, 2003 U.S. Dist. LEXIS 9073, at *15-16 (S.D. Ind. Mar. 17, 2003) (denying motion in *limine* to exclude defendant's response to charge of discrimination), *reconsid. on other grounds*, 2003 U.S. Dist. LEXIS 9067 (Mar. 24, 2003).

Under the controlling Second Circuit case law discussed above, the statements Plaintiffs seek to offer into evidence are relevant and admissible to prove that Defendant's explanations for its actions challenged in this case are pretextual.

### C.   Nothing in Wal-Mart's Position Statements Relates to Settlement Negotiations

Wal-Mart did not submit its Position Statements to the EEOC in the context of settlement negotiations, but rather in the context of the factual investigation of the merits of the charges.  In admitting similar statements, courts distinguish between such "'purely factual material related to the merits of [the] charge' and 'proposals and counter-proposals of compromise made by the parties during the [EEOC's] efforts to conciliate.'"  *Olitsky*, 964 F.2d at 1476-77 (quoting *Branch v. Phillips Petroleum Co.*, 638 F.2d 873, 881 (5th Cir. 1981)) (alteration in original).  In *Binder v. Long Island Lighting Co.*, a case brought under the Age Discrimination in Employment Act, the Second Circuit held that the district court erred in refusing to consider defendant's statement to the EEOC, observing that:

6

> Factual statements regarding past events are distinguishable from offers of compromise, and, if the principal objective of an EEOC proceeding is to ascertain what has occurred and, wherever possible, to resolve disputes without litigation, a rule that allows employers to give off-the-record accounts of relevant events will not necessarily advance that objective.

933 F.2d 187, 193 (2d Cir. 1991) (cited in Def.'s Mem. at 13);[2] *see also Frazier*, 2003 U.S. Dist. LEXIS 9073, at *17 ("A defendant's position statement is not necessarily given as part of such conciliatory endeavors."); *Brooks v. Grandma's House Day Care Ctrs., Inc.*, 227 F. Supp. 2d 1041, 1044 (E.D. Wis. 2002) (holding that "plain language" of § 2000e-5(b) did not bar admission letter from defendant's counsel to EEOC in response to plaintiff's discrimination charge, "not only because the letter was not written in the course of EEOC conciliation efforts, but also because it contained no statements relating to compromise, settlement or negotiation"). At the time the statements at issue were made, the EEOC had not yet made any finding as to the merits of the charges and therefore had not yet begun efforts to conciliate. For these reasons, neither Rule 408, nor any EEOC statute or regulation bars the admission of this evidence.

## II.   WAL-MART'S "BENEFITS STRATEGY MEMORANDUM" SHOULD BE ADMITTED AS CIRCUMSTANTIAL EVIDENCE OF A CULTURE OF DISCRIMINATION ON THE BASIS OF AGE AND DISABILITY

Wal-Mart's corporate culture and calculated strategy of discrimination against older and disabled employees is articulated in a document entitled "Reviewing and Revising Wal-

---

[2]     Wal-Mart's Memorandum of Law in support of its motion to preclude the Position Statements misleadingly cites *Binder* for the proposition that "Title VII contains an express provision barring the admissibility of statements made to the EEOC."  (Def.'s Mem. at 13). As set forth above, however, the Second Circuit in *Binder* held that the district court's failure to consider the EEOC Position Statements was error.  *See Binder* 933 F.2d at 193.

Mart's Benefits Strategy" (the "Benefits Strategy Memo").[3]  The Benefits Strategy Memo

was issued as a "Memorandum to the Board of Directors from Susan Chambers," then Wal-

Mart's Executive Vice President of Benefits, a member of its Executive Committee, a

shareholder, and a Senior Officer.

The Benefits Strategy Memo states:

- "From 2002 to 2005, our benefit costs grew significantly faster than sales;"

- "Increased utilization of medical services, which grew by 10% per year was the primary driver of the rapid growth in our healthcare costs;"

- "[O]ur workforce is aging faster (0.50 years per calendar year) than the national average (0.12 years per calendar year);"

- "The cost of Wal-Mart's profit sharing and 401(k) program and paid time off grew faster than overall Associate growth, due largely to increasing Associate tenure. . . .  Moreover, because we pay an Associate more in salary and benefits as his or her tenure increases, we are . . . increasing the likelihood that he or she will stay with Wal-Mart;"

- "Most troubling the least healthy, least productive workers are more satisfied with their benefits than other segments and are interested in longer careers with Wal-Mart;"

- The "[g]rowth in benefit costs is unacceptable;"

- Wal-Mart should "[r]edesign benefits and other aspects of the Associate experience, such as job design, to attract a healthier, more productive work force."

These statements reflect a discriminatory corporate culture against older, long-

serving employees, as well as employees who are sick or disabled.  Moreover, although the

ideas in the Benefits Strategy Memo were not new to Wal-Mart's management, the Memo

---

[3]       A copy of the Benefits Strategy Memo is attached to the Wigdor Decl. as <u>Ex. 2</u>.

was contemporaneous with the "restructuring" that eliminated Plaintiffs' positions as District Managers for Shoes and Jewelry and created the replacement position of District Fashion Merchandiser.

Beyond the fact that all of the available District Fashion Merchandiser positions for which Plaintiffs applied were awarded to substantially younger and/or male employees, Ms. Zukaitis was on medical leave in connection with a medically necessary thyroid surgery at the time the restructuring was announced. Furthermore, while Ms. Curns and Ms. Zukaitis were each on authorized medical leave, Wal-Mart continued to reject their numerous applications for other later positions, including Co-Manager and Store Manager — consistent with the Benefits Strategy Memo's emphasis on discouraging long-serving, older and/or "unhealthy" employees from continuing to work for Wal-Mart.

Moreover, the furtherance of the discriminatory objectives articulated in the Benefits Strategy Memo was also incentivized at the individual store level, by the classification of employee health benefits as "controllable expenses." (*See* Wigdor Decl. <u>Ex. 3</u> (Daniel Dep. Tr. 128:15-130:24)). Such "controllable expenses" are debited against the profitability calculations for individual stores and districts, and thereby directly reduce the amount of money distributed as bonuses for the managers in the stores and districts that failed to control costs by eliminating older and unhealthy employees. (*See id.* at <u>Ex. 4</u> (Hawk Dep. Tr. 82:13-83:11)). Similarly, whereas the annual performance evaluations for District Managers for Shoes and Jewelry valued employee retention (including a sub-category specific to the retention of female employees) as 10% of the total annual performance score, this criteria was deleted from the annual performance evaluation forms

for the new Fashion Merchandiser positions, reinforcing Wal-Mart's formal strategy of seeking to drive older, female and/or unhealthy employees out of the company.

Further circumstantial evidence of the discriminatory motivations for the restructuring that eliminated Plaintiffs' positions appears in Wal-Mart's official internal announcement of the newly created Fashion Merchandiser, which characterized the ideal candidates for position as "highly energetic." In the context of Wal-Mart's strategy of reducing costs by discouraging the continued tenure of long-serving employees — which was further incentivized at the individual store level by evaluating store managers on the basis of their ability to "control" the costs associated with an "aging" workforce — the jury can properly infer that the phrase "highly energetic" was also a statement of Wal-Mart's preference for the new Fashion Merchandiser positions to be filled by younger applicants, consistent with the objectives outlined in the Benefits Strategy Memo. *See Aka v. Washington Hosp. Center*, 156 F.3d 1284, 1298 (D.C. Cir. 1998) (*en banc*) (noting that employer's statement that candidate selected for position was more "enthusiastic" could support inference of discrimination because of "the fact that outward manifestations of 'enthusiasm' are just the kind of traits that advancing age . . . may tend to diminish."); *Sperling v. Hoffmann-La Roche, Inc.*, 924 F. Supp. 1396, 1408-09 (D.N.J. 1996) ("[P]laintiffs' claims that they were terminated because they were "perceived to be 'less productive or less energetic' . . . stated a cause of action under the ADEA . . . because consideration of stereotypes such as these in making employment decisions is precisely what the ADEA was intended to eradicate.") (citation omitted).

Notwithstanding the overwhelming relevance of the Benefits Strategy Memo as circumstantial evidence of Wal-Mart's discriminatory motivations for denying Plaintiffs'

numerous applications for lateral transfers in favor of substantially younger employees in the wake of the restructuring, Wal-Mart argues that the Memo should be precluded because it "was neither authored nor received by any of the decision makers" who were immediately responsible for rejecting Plaintiffs' applications.  (*See* Def.'s Mem. at 17).  However, the Second Circuit has long recognized that statements by a non-decisionmaker are admissible where a "jury could well believe" that the "comments reflected company policy and hence constituted evidence of discrimination."  *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 55 (2d Cir. 1998).

Moreover, at least one district court has held that the Benefits Strategy Memo at issue was admissible against Wal-Mart as circumstantial evidence of a discriminatory corporate culture against an employee who was terminated 18 months *before* the Memo was drafted.  *Farrell v. Wal-Mart Stores, Inc.*, No. 05-2168 (TMG), 2007 U.S. Dist. LEXIS 25246, at *8 (E.D. Pa. Mar. 19, 2007) (explaining "that the statements contained in the Memo may have reflected a cumulative managerial attitude that had been held for a considerable time") (citation omitted); *see also Buscemi v. Pepsico, Inc.*, 736 F. Supp. 1267, 1270 (S.D.N.Y. 1990) (statements expressing aversion to older workers were relevant even though they were uttered by a person not directly responsible for plaintiff's termination where the speaker was an executive whose position concerned personnel policy); *Hunt v. Tektronix, Inc.*, 952 F. Supp. 998 at 1007 (W.D.N.Y. 1997) (comments that defendant needed to hire "young aggressive sales engineers and recent college graduates" established inference of discrimination where they were made at sales meetings two months prior to layoffs); *Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 333 (3d Cir. 1995) ("A supervisor's statement about the employer's employment practices or managerial policy is

11

relevant to show the corporate culture in which a company makes its employment

decision, and may be used to build a circumstantial case of discrimination."); *Josey v. John R.*

*Hollingsworth Corp.*, 996 F.2d 632, 641 (3d Cir. 1993) ("The court may also consider as

circumstantial evidence the atmosphere in which the company made its employment

decisions."); *Lockhart v. Westinghouse Credit Corp.*, 879 F.2d 43, 54 (3d Cir. 1989) ("When a

major company executive speaks, 'everybody listens' in the corporate hierarchy, and when

an executive's comments prove to be disadvantageous to a company's subsequent litigation

posture, it can not compartmentalize this executive as if he had nothing more to do with

company policy than the janitor or watchman."), *overruled on other grounds*, *Starceski v.*

*Westinghouse Elec. Corp.*, 54 F.3d 1089 (3d Cir. 1995); *Russell v. McKinney Hosp. Venture*,

235 F.3d 219, 226 (5th Cir. 2000) ("If the [plaintiff] can demonstrate that others had

influence or leverage over the official decisionmaker . . . it is proper to impute their

discriminatory attitudes to the formal decisionmaker"); *Cline v. Roadway Exp., Inc.*, 689 F.2d

481, 488 (4th Cir. 1982) (affirming admission of evidence that at managers' meetings

certain managers stated that corporate policy was designed to replace older workers with

younger, better qualified ones).

     The cases cited by Wal-Mart are not inconsistent with these holdings.  For example,

in *Rea v. Martin Marietta Corp.*, 29 F.3d 1450, 1459 (10th Cir. 1994) (cited in Def.'s Mem. at

17), the court concluded that a memo outlining an "alleged hidden policy" of bias against

older employees at one of the defendant's subsidiaries was inadmissible due to the absence

of any connection between the subsidiary or memo and the plaintiff's department or layoff.

In contrast, a high-ranking corporate official at Wal-Mart drafted the Benefits Strategy

Memo at issue in this case shortly before Ms. Curns was demoted and Ms. Zukaitis was

constructively discharged in furtherance of the precise objectives that the Memo

articulates, demonstrating a clear connection between the ideas in the Memo and Wal-

Mart's discrimination against Plaintiffs

Wal-Mart's motion to preclude the Benefits Strategy Memo should therefore be

denied, as the Memo is relevant circumstantial evidence of discrimination against Plaintiffs

in furtherance of a corporate policy imposed by Wal-Mart's senior executives.

### III.   WAL-MART'S MOTION TO PRECLUDE "CAUSATION TESTIMONY REGARDING PLAINTIFFS' CLAIMS FOR EMOTIONAL DISTRESS" SHOULD BE DENIED

Wal-Mart mistakenly argues that although Plaintiffs' treating physicians are

concededly entitled to testify "in a general manner regarding their alleged mental anguish

or emotional distress," Plaintiffs "should be precluded at trial from offering any evidence to

suggest to the jury that Wal-Mart caused any emotion distress injuries," because such

causation testimony purportedly "requires an expert, opinion, which both Plaintiffs failed

to obtain in this case."  (Def.'s Mem. at 8).  Simply put, Wal-Mart's argument for preclusion

is contradicted by the overwhelming weight of authority within the Second Circuit, which

consistency recognizes that treating physicians are entitled to proffer opinion testimony

irrespective of expert disclosure requirements under Fed. R. Civ. P. 26(a)(2)(B).  *See, e.g.,*

*Willis v. Onondaga County*, 04-CV-0828 (GTS)(GJD), 2010 U.S. Dist. LEXIS 13832, at *8

(N.D.N.Y Feb. 17, 2010) ("Rule 26(a)(2)(B) does not require a treating physician to provide

a report as a predicate to testifying for his patient" because "the report requirement is

applicable only to those experts who are retained or specially employed to provide expert

testimony in the case or whose duties as an employee of a party regularly involve the giving

of such testimony.") (citations omitted); *Byrne v. Gracious Living Indus.*, 01-CV-10153

(LAK), 2003 U.S. Dist. LEXIS 2552, at *5 (S.D.N.Y. Feb. 25, 2003) ("treating physician who is

13

called to testify on information acquired solely in that role, as opposed to giving an opinion formulated for trial, is not an expert for purposes of Rule 26(a)(2)(A)," notwithstanding any opinion testimony he or she may offer); *DeRienzo v. Metro. Transit Auth.*, No. 01-CV-8138 (CBM), 2004 U.S. Dist. LEXIS 439, at *5 (S.D.N.Y. Jan 15, 2004) ("[A] doctor is not precluded from testifying to facts learned and opinions formed in the course of treatment by virtue of the fact that a party did not make the expert disclosures required under Rule 26(a)(2) because the doctor is not an 'expert' subject to the Rule.") (citations omitted); *Zanowic v. Ashcroft*, No. 97-CV-5292 (JGK)(HBP), 2002 U.S. Dist. LEXIS 3857, at *4 (S.D.N.Y. Mar. 8, 2002) ("there can be no serious dispute" that a treating physician is "free to testify to opinions he formed" during treatment without submitting an expert disclosure pursuant to Rule 26(a)(2)) (collecting cases); *Salas v. United States*, 165 F.R.D. 31, 32 (W.D.N.Y. 1995) (doctors' "opinions with respect to the injuries or illnesses sustained as they causally relate to [the] incident and his/her opinion as to permanency" are not subject to expert witness disclosure); *Chiquita Int'l v. M/V Bolero Reefer*, 93-CV-167 (LAP), 1994 U.S. Dist. LEXIS 5820, at *3 (S.D.N.Y. May 6, 1994) ("The relevant distinction is not between fact and opinion testimony but between those witnesses whose information was obtained in the normal course of business and those who were hired to make an evaluation in connection with expected litigation.").

Furthermore, the Pretrial Scheduling Order in this case explicitly provides, with respect to "Expert Reports," that:

> When a treating physician is expected to be called as a witness, he or she must also be identified in accordance with this rule.  The production of written reports prepared by a

> treating physician, pursuant to Fed. R. Civ. P. 26(a)(2)(B) is
> encouraged as an aid to settlement, but not required.[4]

Here, Wal-Mart cannot dispute that Plaintiffs identified their medical providers — including those who may testify as to a causal connection between Wal-Mart's actions and their claims for emotional distress — during the earliest stages of discovery.  Indeed, at Wal-Mart's insistence, Plaintiffs' also provided authorizations for Wal-Mart to obtain copies of Plaintiffs' medical records from each of their treating physicians for the duration of this litigation, and Wal-Mart questioned Ms. Curns' about her psychiatric treatment records during her deposition.

Under these circumstances, Wal-Mart's motion to preclude causation testimony regarding Plaintiffs' emotional distress on the grounds of Plaintiffs' purported failure to comply with their disclosure obligations in discovery is devoid of any merit and should be denied.

## IV.   WAL-MART'S MOTION TO PRECLUDE "TESTIMONY FROM OTHER INDIVIDUALS REGARDING ALLEGED AGE OR SEX DISCRIMINATION AT WAL-MART" SHOULD BE DENIED

Plaintiffs are entitled to present testimony of other older female employees who were subjected to discrimination by Wal-Mart in connection with the restructuring that eliminated Plaintiffs' positions as District Managers for Shoes and Jewelry as circumstantial evidence of Wal-Mart's discriminatory motives for the demotion of Ms. Curns and constructive discharge of Ms. Zukaitis.  *See Schelero v. Avis Rent a Car Sys.*, 99-CV-2003 (NGG), 2001 U.S. Dist. LEXIS 24680, *5 (E.D.N.Y. Nov. 20, 2001) (Denying Defendants'

---

[4]      The Scheduling Order also provides that "Motions to preclude expert witness testimony must be filed and served on or before the [December 17, 2007] dispositive motions deadline," which suggests that this entire branch of Wal-Mart's motion *in limine* should also be denied as untimely.

motion *in limine* "to exclude anecdotal evidence of how purported changes in policies and practices effected employees in other departments" because "Plaintiff's use of this evidence as further circumstantial evidence of Defendants' discriminatory motives toward older employees is relevant and admissible.")*; Masters v. F.W. Webb Co.*, No. 03-CV-6280L, 2006 U.S. Dist. LEXIS 64645, at *7-8 (W.D.N.Y. Sept. 11, 2006) (In a case such as this alleging unlawful discrimination, evidence of the intent and motive of the decision-makers is plainly relevant; furthermore, that intent and motive may be inferred from evidence of their treatment of others within the same protected categories as the plaintiff.") (citing *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335-36, n.15 (1977) ("proof of discriminatory motive can in some situations be inferred from the mere fact of differences in treatment") (citations and internal quotations omitted)).

Defendant's treatment of and attitude toward other female and/or older employees is also relevant and routinely admitted in similar circumstances to establish discriminatory intent against a plaintiff. "Because an employer's past discriminatory policy and practice may well illustrate that the employee's asserted reasons for disparate treatment are a pretext for intentional discrimination, this evidence should normally be freely admitted at trial." *Phillip v. ANR Freight Sys., Inc.*, 945 F.2d 1054, 1056 (8th Cir. 1991) (internal citations omitted) (holding that trial court error in excluding evidence of other employees' Title VII claims against defendant required remand for a new trial). "[A]n employer's background of discrimination is indeed relevant to proving a particular instance of discrimination." *Id.*

As the Second Circuit has recognized, "[b]ecause employers rarely leave a paper trail — or 'smoking gun' — attesting to a discriminatory intent . . . disparate treatment

16

plaintiffs must often build their cases from pieces of circumstantial evidence which cumulatively undercut the credibility of the various explanations offered by the employer." *Hollander v. Am. Cyanmid Co.*, 895 F.2d 80, 84-85 (2d Cir. 1990) (plaintiff rightly requested information on other employees in his protected class because "evidence relating to company-wide practices may reveal patterns of discrimination against a group of employees" making it more likely that the employer's explanation "masks a discriminatory motive" against plaintiff); *see also Spulak v. K Mart Corp.*, 894 F.2d 1150, 1156 (10th Cir. 1990) ("As a general rule, the testimony of other employees about their treatment by the defendant is relevant to the issue of the employer's discriminatory intent"); *Obiajulu v. City of Rochester Dep't of Law*, 166 F.R.D. 293, 296 (W.D.N.Y. 1996) (even if plaintiff is alleging individual disparate treatment, evidence as to company-wide practices may reveal evidence that increases the likelihood that employment decision relating to plaintiff was discriminatory); *Zahorick v. Cornell Univ.*, 98 F.R.D. 27, 31 (N.D.N.Y. 1983) ("evidence of general practices of discriminatory treatment by an employer is relevant even in the individual disparate treatment case"); *Jones v. WMATA*, 946 F. Supp. 1011, 1019 (D.D.C. 1996) ("evidence of prior discriminatory acts are relevant to [defendant's] motive and intent") (citing *Morris v. WMATA*, 702 F.2d 1037, 1045 (D.C. Cir. 1983) ("The question of the legitimacy of the employer's motivation . . . is one upon which the past acts of the employer have some bearing.")).

Although Wal-Mart objects to the relevancy of witnesses testifying at trial "about their subjective belief and speculation regarding the cause of certain actions in which they had no personal involvement" (Def.'s Mem. at 7), this speculative and self-serving mischaracterization of the potential trial testimony is, at the very least, premature and

cannot be resolved until the actual substance of each witness' testimony develops at trial. *See Mugavero v. Arms Acres, Inc.*, No. 03-CV-5724 (PGG), 2009 U.S. Dist. LEXIS 56214, at *8 (S.D.N.Y. July 1, 2009) (reserving decision "as to whether particular testimony will be excluded until it is possible to determine whether a given witness will offer fact testimony based on personal knowledge or improper lay opinion testimony") (citing, *inter alia*, *Bazile v. New York City Hous. Auth.*, No. 00-CV-7215 (SAS), 2002 U.S. Dist. LEXIS 1639, at *11 n.21 (S.D.N.Y. Feb. 1, 2002) ("While neither [other employees] . . . nor any lay witness may offer her opinion as to whether [plaintiff] . . . was treated differently on the basis of race, [other employees] . . . may certainly offer their observations based on personal knowledge.")).

Wal-Mart also cites a series of cases for the proposition that unrelated incidents of discrimination are irrelevant to an individual plaintiff's claims.  (*See* Def.'s Mem. at 5-6). However, the potential testimony at issue here relates to witnesses in the same protected classes as Plaintiffs, who experienced the same form of discrimination as Plaintiffs, in the context of the same corporate restructuring that is at issue in this case.  The clear nexus between the discrimination suffered by Plaintiffs and the witnesses referenced in Wal-Mart's motion demonstrates that the cases relied upon by Wal-Mart are readily distinguishable.  *See*, *e.g.*, *Martin v. Reno*, 96-CV-7646 (NRB), 2000 U.S. Dist. LEXIS 18278, at *10 (S.D.N.Y. Dec. 18, 2000) (cited in Def.'s Mem. at 5) (citing and quoting *Heno v. Sprint/United Mgmt. Co.*, 208 F.3d 847, 856 (10th Cir. 2000) ("Anecdotal evidence of discrimination should only be admitted if the prior incidences of alleged discrimination can somehow be tied to the employment actions disputed in the case at hand.")); *Dauer v. Verizon Commc'n Inc.*, 03-CV-5047 (PGG), 2009 U.S. Dist. LEXIS 5182, at *13-14 (S.D.N.Y. Jan. 26, 2009) (cited in Def.'s Mem. at 5) ("The question whether alleged evidence of

discrimination experienced by Dauer and Pucino is admissible is fact based and depends on many factors, including how closely related the evidence is to . . . [Cole's] circumstances and theory of the case.") (citations omitted); *Haskell v. Kaman Corp.*, 743 F.2d 113, 121-22 (2d Cir. 1984) (cited in Def.'s Mem. at 5-6) (concluding that because five potential witnesses "were replaced by older persons and one by a person only eight months the discharged officer's junior" their anticipated testimony "was not relevant to the question of whether Haskell was terminated for age-related reasons") (citations and internal quotations omitted).

Accordingly, Wal-Mart's motion to preclude the testimony of potential witnesses should be denied, and any ruling as to the scope and relevancy of such witnesses' testimony should be reserved until grounds for objection, if any, arise at trial.

## V. WAL-MART'S MOTION TO PRECLUDE EVIDENCE OF WIGGINS' DISHONORABLE DISCHARGE FOR WRITING "BAD CHECKS" SHOULD BE DENIED

Wal-Mart argues that Plaintiffs should be precluded from impeaching the credibility of Stacy Wiggins — a decisionmaker who denied several of Ms. Curns' applications for Fashion Merchandiser and other lateral management positions — on the basis of her having been dishonorably discharged from the military for writing "bad checks." (Def.'s Mem. at 9-10). However, Wal-Mart mistakenly challenges the admissibility of this impeachment evidence under the framework of Fed. R. Evid. 609, which governs impeachment by evidence of "conviction of a crime." (*See* Def.'s Mem. at 5). But rather than seeking to impeach Wiggins on the basis of a prior criminal conviction, Plaintiffs seek to impeach Wiggins' character for *truthfulness* by questioning her on cross-examination with respect to having written bad checks, a specific prior instance of dishonest conduct. This form of impeachment is governed by Fed. R. Evid. 608(b), under which Wiggins' untruthful

19

conduct in connection with her bad checks is squarely admissible. *See United States v. Lawton*, 366 F.3d 550, 552 (7th Cir. 2004) (affirming district court's ruling that government could ask witness about his having written bad checks, pursuant to FRE 608(b), which permits cross-examination of a witness regarding specific instances of his own conduct for the limited purpose of establishing his character for truthfulness or untruthfulness).[5]  Wal-Mart's motion to preclude this impeachment evidence should therefore be denied.

## VI.   WAL-MART'S MOTION TO PRECLUDE EVIDENCE OF DECISIONMAKER RANDY SIMS' "DISCIPLINARY COACHING" SHOULD BE DENIED

Wal-Mart's motion to preclude evidence of prior discipline imposed against Randy Simms — another decisionmaker whose discriminatory motives are at issue in this case — for making discriminatory statements in the workplace should also be denied, as this prior incident is relevant circumstantial evidence of Sims' state of mind in connection with the challenged conduct in this case. *See Catalano v. Lynbrook Glass & Architectural Metals Corp.*, No. 06-CV-2907 (JFB)(AKT), 2008 U.S. Dist. LEXIS 589, at *25-26 (E.D.N.Y. Jan. 4, 2008) (holding that "a reasonable jury could surely find a nexus" between discriminatory comment made by decisionmaker with authority to hire and fire plaintiff and challenged employment decisions at issue); *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 91 (2d Cir.

---

[5]      Although Plaintiffs seek to impeach Wiggins' character for truthfulness pursuant to Rule 608, as set forth above, it should be noted that numerous courts have held that prior convictions for writing bad checks are also admissible impeachment evidence under Rule 609. *See, e.g., United States v. Lewis*, No. 07-258 (NBF), 2009 U.S. Dist. LEXIS 39280, at *48-49 (W.D. Pa. May 8, 2009) (holding that because check fraud is "undoubtedly a *crimen falsi* crime . . . evidence of [witness'] conviction on this charge [is] admissible for impeachment purposes under Rule 609(a)(2)"); *United States v. Miller*, No. CR 09-4014 (MWB), 2009 U.S. Dist. LEXIS 102035, at *12 (N.D. Iowa Oct. 30, 2009) (defendant's "'bad check' offense is admissible for impeachment purposes pursuant to Rule 609(a)(2), if he testifies"); *United States v. Kane*, 944 F.2d 1406, 1413 (7th Cir. 1991) (misdemeanor bad-check conviction admissible under Rule 609(a)(2)).

1996) (holding that inference of discrimination may arise from "actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus"); *Schelero v. Avis Rent a Car Sys.*, 99-CV-2003 (NGG), 2001 U.S. Dist. LEXIS 24680, *3-4 (E.D.N.Y. Nov. 20, 2001) ("Although 'stray remarks' alone have been found insufficient to sustain a plaintiff's case . . . whether or not such statements, when taken in context with other evidence, demonstrate discriminatory motives by the Defendants is for the jury to decide."); *Azar v. TGI Friday's, Inc.*, 945 F. Supp. 485, 499 (E.D.N.Y. 1996) (holding discriminatory comments not stray where made by superior who advised decisionmaker on personnel matters related to plaintiff).  Accordingly, Wal-Mart's motion to preclude evidence of Sims' disciplinary history in connection with his discriminatory comments in the workplace should also be denied.

## VII.   WAL-MART'S MOTION TO PRECLUDE TESTIMONY REGARDING ADVANCE PROVISION OF INTERVIEW SCRIPT TO A SUBSTANTIALLY YOUNGER MALE APPLICANT SELECTED AS FASHION MERCHANDISER IN FAVOR OF MS. CURNS SHOULD BE DENIED

Wal-Mart seeks to preclude testimony by Ms. Curns' concerning John Morgans' statements to her about having received a copy of the interview script for the Fashion Merchandiser position prior to being interviewed for the position by Wiggins.[6]  However, Wal-Mart's claim that testimony about Morgans' conversation with Ms. Curns should be precluded as inadmissible hearsay fails for at least two reasons.  First, Wal-Mart has identified Morgans as a witness who it expects to call at trial.  (*See* Wal-Mart Witness List, at "Will Call Witnesses" No. 12).  The fact that Morgans will be called to testify eviscerates the basis for Wal-Mart's purported hearsay objections with respect to his prior out-of-court

---

[6]      Wiggins ultimately awarded the position to Morgans, who purportedly interviewed better and seemed more "excited" about the position.

statement to Ms. Curns.  *See generally Schelero v. Avis Rent a Car Sys.*, 99-CV-2003 (NGG), 2001 U.S. Dist. LEXIS 24680, *4 (E.D.N.Y. Nov. 20, 2001) ("To the extent Defendants object to hearsay statements by non-supervisory co-employees, such evidence will be subject to relevancy and hearsay objections at trial.").

More significantly, Wal-Mart's motion should be denied because Plaintiffs do not seek to introduce Morgans' statements to Ms. Curns for the truth of the matters stated, but rather as additional circumstantial evidence of Wal-Mart's discriminatory motivations against Plaintiffs.  Specifically, when Ms. Curns complained to Wiggins about the discriminatory denial of her applications for Fashion Merchandiser positions in favor of substantially younger and/or male applicants, she told Wiggins about Morgans' statement regarding his advance receipt of an interview script as evidence of Wal-Mart's discriminatory favoritism towards younger male applicants.  (*See* Wigdor Decl. <u>Ex. 6</u> (Curns Dep. Tr. 118:12-119:4)).

Whether or not Morgans actually received such a script, the significance of this issue lies in Wiggins' response to Ms. Curns, including her total lack of concern for Curns' report of apparent misconduct in the applicant interview process.  (*See id.*).  Wal-Mart's indifference to Ms. Curns' report of preferential treatment being afforded to a younger male applicant is relevant circumstantial evidence of Wal-Mart's discriminatory favoritism for younger male applicants, such as Morgans, over older female applicants, such as Plaintiffs, and Ms. Curns' discussion with Wiggins about Morgans statements is therefore admissible.[7]

---

[7]      This conclusion is also reinforced by the deposition testimony of Regional Vice President Margaret Daniel who, when questioned about this issue at her deposition, testified that "it would *not* be inappropriate" for managers to selectively distribute advance copies of the interview script to individual candidates of their choosing.  (*See* Wigdor Decl.

Thus, Wal-Mart's motion should be denied, because even if Morgans does not testify, his statements to Ms. Curns are admissible as circumstantial evidence of Wal-Mart's discrimination against Plaintiffs.

## VIII.   WAL-MART'S MOTION TO PRECLUDE "EVIDENCE RELATING TO DAMAGES THAT HAS NOT BEEN PRODUCED TO WAL-MART" IS BASELESS AND SHOULD BE DENIED

Wal-Mart's motion to preclude Plaintiffs from presenting evidence of damages on the basis of Plaintiffs' purported failure to supplement their discovery responses is devoid of merit.  Plaintiffs have indisputably provided Wal-Mart with copies of IRS Forms W-2 reflecting income earned from subsequent employers, as well as tax records reflecting their receipt of unemployment benefits.[8]  Moreover, Wal-Mart does not and cannot deny that it is in possession of all relevant information concerning the compensation paid to the employees who it hired in favor of Plaintiffs for each of the positions for which Plaintiffs applied.  Wal-Mart's assertion of unfair prejudice on the basis of Plaintiffs' purported failure to provide a calculation of the difference between (i) the compensation that Wal-

---

Ex. 3 (Daniel Dep. Tr. 77:10-18; 78:13-79:20)).  This explicit condonation of managers' efforts to ensure the success of younger male candidates' applications for Fashion Merchandiser positions is thus relevant and admissible circumstantial evidence of Wal-Mart's intentional discrimination against Plaintiffs on the basis of age and gender in connection with their attempts to secure similar lateral management positions in the wake of the restructuring.

[8]      Although Wal-Mart suggests that Plaintiffs have failed to produce documentation concerning the short "sale of Ms. Curns" family home (*see* Def.'s Mem. at 19), this information has no bearing on the amount of damages that Plaintiffs have sustained as a result of Wal-Mart's conduct.  In any event, Plaintiffs have no intention of seeking to introduce into evidence any documentation that has not been produced to Wal-Mart in connection with their claims for damages in this case.

Mart paid to its own employees, and (ii) the compensation reflected on Plaintiffs' W-2's and unemployment records, is patently frivolous.[9]

Similarly, Wal-Mart's complaint about Plaintiffs' purported failure to produce documentation concerning "any treatment by a health care provider or therapist for alleged emotional distress" is belied by the fact that, during discovery — and at Wal-Mart's insistence — Plaintiffs provided Wal-Mart with authorizations to obtain copies of Plaintiffs' medical records directly from their healthcare providers.  (*See* Wigdor Decl. Ex. 5).  Wal-Mart has been in possession of those authorizations — which explicitly state that they remain effective through the conclusion of this litigation — since August 3, 2007.  (*See id.*) As such, Wal-Mart's argument appears to rest on the implication that, at some point after August 3, 2007, it abandoned its insistence on obtaining Plaintiffs' medical records directly from Plaintiffs' healthcare providers, and instead expected Plaintiffs to obtain and produce the records, notwithstanding its refusal to accept such production during discovery.

Moreover, as Wal-Mart acknowledges in its Memorandum, after Wal-Mart failed to provide Plaintiffs with copies of their medical records pursuant to the previously provided authorizations, *Plaintiffs*, in an abundance of good faith, obtained and produced copies of their records to Wal-Mart, to ensure that Wal-Mart would not be prejudiced by its own failure to obtain the records directly.  (*See* Def.'s Mem. at 20 n.8).  There is consequently no

---

[9]     To the extent that the Court determines that Wal-Mart has suffered prejudice by having to perform this calculation, Plaintiffs are willing to subtract the sums stated on their respective W-2's and unemployment forms from the sums stated on the documentation that Wal-Mart has produced concerning the compensation paid to the substantially younger and/or male employees that it hired in favor of Plaintiffs, and to advise Wal-Mart of the resulting computation of economic damages at issue in this case.

merit to Wal-Mart's motion to preclude Plaintiffs from introducing evidence of their damages, and Wal-Mart's motion should be denied.

## **CONCLUSION**

For the reasons set forth herein, Plaintiffs respectfully request that the Court deny Defendant's omnibus motions *in limine* in its entirety.

Dated: April 19, 2010
     New York, New York

Respectfully submitted,

**THOMPSON WIGDOR & GILLY LLP**

By: _____
    Douglas H. Wigdor (511986)
    Andrew S. Goodstadt (514688)
    Ariel Y. Graff (514732)

85 Fifth Avenue
New York, NY 10003
Tel. (212) 257-6800
Fax. (212) 257-6845
dwigdor@twglaw.com
agoodstadt@twglaw.com
agraff@twglaw.com

*COUNSEL FOR PLAINTIFFS*